UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

| | | |
|---|---|---|
| Denise Izzo | : | |
| | : | CIVIL ACTION NO.: 09-5918 |
| | : | |
| v. | : | |
| | : | JURY OF TWELVE (12) |
| First National Land Transfer, Inc. et al. | : | JURORS DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANT STEWART TITLE'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, by and through her attorneys, responds in opposition to Defendant Stewart Title's Motion to Dismiss her First Amended Complaint as to Points I, IV, and V. Plaintiff withdraws its claims for breach of fiduciary duty, breach of contract, and violation of the New Jersey Consumer Fraud Act against Defendant Stewart Title. Plaintiff otherwise responds to Points I, IV, and V raised by defendant as follows:

**I.    Response to Points I and IV B. of Defendant Stewart's Motion**

Stewart disputes that fraud is alleged with particularity as to it under FRCP 9, "plaintiff has not identified the role played by Stewart Title in the allegedly fraudulent conduct or otherwise alleged that Stewart Title made any misrepresentations or omissions in connection with the issuance of title insurance or the complained of transaction." Neither charge is supported by a reading of the FAC. First, Stewart's role is described in the complaint as principal of agent defendant First National, FAC ¶¶6, 10, 48. Plaintiff then alleges the misrepresentations and omissions made by Stewart's agent, First National, to plaintiff, FAC ¶¶25, 29 – 34, are therefore vicariously made by Stewart to plaintiff. Plaintiff has alleged all other elements of fraud, FAC ¶¶ 74-77. Second, the acts of its agent supporting the fraud are clearly pleaded, to wit plaintiff alleges title agent First National took a voided check from plaintiff and otherwise obtained written

authorization from plaintiff to deposit proceeds of the loan to her bank account and then disbursed the funds to a different bank account belonging to DeFalco upon a forged authorization purporting to be from plaintiff, see again FAC ¶¶25, 29 – 34.  Alleging that Title agent conspired with DeFalco to do so is not "lumping together" their acts. Rather it is the nature of conspiratorial conduct that such acts of various parties are merged.

An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent. Arcell v. Ashland Chem. Co., 152 N.J. Super 471, 494-95, 379 A2d 53 (Law Div. 1977); *2A C.J.S. Agency § 37 (1972); Restatement (Second) of Agency §1 (1958)*.  There need not be an agreement between parties specifying an agency relationship; rather, "the law will look at their conduct and not to their intent or their words as between themselves but to their factual relation." Henningsen v. Bloomfield Motors, 32 N.J. 358, 161 A2d 69 (1960). (finding agency relationship between auto manufacturer and car dealer). "Implied authority may be inferred from the nature or extent of the function to be performed, the general course of conducting the business, or from particular circumstances in the case." Carlson v. Hannah, 6 N.J. 202, 212, 78 A2d 83 (1951). Moreover, direct control of principal over agent is not absolutely necessary; a court must examine the totality of the circumstances to determine whether an agency relationship existed even though the principal did not have direct control over the agent. *2 C.J.S. Agency § 36, at 599-600 (1972)*.

At all times, First National acted within the scope of its authority to disburse funds from the loan transaction when it fraudulently distributed funds to broker DeFalco's account regardless.  The Supreme Court in Sears Mort. Corp. v. Rose, 134 N.J.

326, 634 A.2d 74 (N.J. 1993) held that a closing attorney retained by a property's purchaser was agent of the title insurer, and thus the title insurer was liable for attorney's theft of closing funds.  Citing persuasively <u>Meyerson v. Lawyers Title Insurance Co</u>., 39 A.D. 2d 190, 333 N.Y.S. 2d 33 (1972), the court found that the attorney was acting within the scope of his authority as an authorized agent of the title company when he was committed the theft.  The Supreme Court has elsewhere found that title insurer's are vicariously liable for the fraud of their agents, <u>Clients' Sec. Fund of the Bar of New Jersey v. Security Title and Guar. Co</u>. 134 N.J. 358, at 369, 634 A.2d 90 N.J. (N.J.1993).

Another factor which influenced the <u>Rose</u> court in its decision was that the title insurer in that matter was in the best position to prevent the loss created by the closing attorney's theft.  The court opined that "Commonwealth [the title insurer] was aware of the risk of defalcation of closing funds by such attorneys. By dealing solely with attorneys rather than with their clients, it enabled the attorney to mislead or harm the purchaser. Commonwealth was in a position either to prevent or to protect against the loss suffered." <u>Sears,</u> *supra*, at 346. Likewise, in the case at hand, Stewart chose to allow the transaction to be closed by its agent rather than by one of its own employees in its own offices despite knowing, like any large title insurer would, of the risk of defalcation by that agent.  Therefore, Stewart, like Commonwealth in <u>Rose</u>, was in a position to prevent the loss to plaintiff.

Stewart has not disputed First National's alleged status as its agent, fraud is alleged with particularity as to its agent's acts, and therefore the allegations of the FAC stand as to fraud against Stewart for purposes of 12(b)(6) determination.

II.     <u>**Response to Point V of Defendant Stewart's Motion**</u>

3

As with its argument of lack of particularity of plaintiff's fraud allegations, defendant Stewart's argument as to plaintiff's conspiracy allegations being insufficient is another general broadside that relies upon the court not reading the actual allegations of the complaint and accepting at face value defendant's argument. To wit, plaintiff alleges Stewart's agent conspired with mortgage broker DeFalco and DeFalco's employer to divert and convert loans funds, FAC ¶¶25, 29 – 34 and disguise said acts after the fact to facilitate their being perpetrated, FAC ¶¶83-84.  Thereby, plaintiff has pleaded all three (3) elements of civil conspiracy cited by defendant, 1) a civil wrong – stealing loan funds; 2) overt acts in aid of such – forging documents to divert the funds and deceiving plaintiff about it thereafter; and, 3) such overt acts proximately causing plaintiff's damages of over $98,000.

### III.    Conclusion

Defendant Stewart Title has failed to mount credible argument to dismiss plaintiff's fraud and civil conspiracy counts against it and its motion should fail in this twin regard.

>                             WEISBERG LAW, P.C.
>
>                             /s/Matthew B. Weisberg
>                             MATTHEW B. WEISBERG,
>                             ESQUIRE
>                             Attorney for Plaintiff

Certificate of Service

 I, Matthew B. Weisberg, counsel for Plaintiff, hereby certify that I filed the foregoing Response to Defendant Stewart Title's Motion to Dismiss plaintiff's First Amended Complaint electronically and that all parties have been served via ECF email.

Dated: May 1, 2010          /s/Matthew B. Weisberg